# EXHIBIT 1

ANNE I. YEN, Bar No. 187291
BENJAMIN J. FUCHS, Bar No. 320793
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
Telephone (510) 337-1001
Fax (510) 337-1023
E-Mail: courtnotices@unioncounsel.net
        ayen@unioncounsel.net
        bfuchs@unioncounsel.net

Attorneys for Plaintiff Paula Ventura

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| PAULA VENTURA,<br><br>               Plaintiff,<br><br>   v.<br><br>CULTURAL CARE USA, EF EDUCATION FIRST, and DOES 1-10,<br><br>               Defendants. | Case No.<br><br><br>**COMPLAINT**<br><br>1. Failure to Pay for Each Hour Worked (Labor Code §§ 218, 510, 1182.12, 1194, 1194.2, 1197, 1197.1; Wage Order 4, §§ 3, 4, 9(B), 20)<br>2. Failure to Provide Paid Rest Breaks (Wage Order 4, § 12, Labor Code §§ 226.7, 1197)<br>3. Failure to Provide Full Rest Break Pay Under Labor Code § 226.2(a)(3)<br>4. Failure To Provide Accurate Itemized Wage Statements (Labor Code §§ 226-226.3);<br>5. Failure to Reimburse for Expenses Incurred by Employee in Direct Consequence of the Discharge of Duties (Labor Code § 2802)<br>6. Violations of the Unfair Competition Law (Bus. & Prof. Code §§ 17200 *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

# I. NATURE OF ACTION

1.     For decades, affiliated defendants EF Education First and Cultural Care USA ("Defendants") have provided au pair services to American families using a workforce that it largely treats as independent contractors.

2.     In addition to the au pairs themselves, this workforce includes "Local Childcare Coordinators" ("LCCs"). LCCs serve as de-facto recruiters, placement coordinators, and day-to-day supervisors of Defendants' au pairs before, during, and after the au pairs' assignment to Defendants' host families.

3.     Plaintiff Paula Ventura ("Ventura") has been employed as an LCC for Defendants since approximately April 29, 2016.

4.     Beginning from the date of her hiring, Ventura has received compensation exclusively in the form of various preset flat fees, which she receives in exchange for her completion of specified set tasks.

5.     Under this system, Ventura has received predetermined flat fees for various defined services rendered and tasks accomplished. Defendants' clearly defined compensation system, as articulated, e.g., in Defendants' "LCC Monthly Compensation" guide, establishes several different flat-fee payments associated with the completion of various discrete tasks.

6.     While Defendants have variously labeled these payment types as "fees" or "bonuses," all such payments types share three critical and fundamental characteristics: (1) they are triggered by the completion of a certain defined action; (2) they are calculated by multiplying the number of such actions by the predetermined set rate for the action in question; and (3) they bear no relation to the time the LCC actually spends completing the action in question.

7.     For example, upon Ventura's hiring as an LCC in April 2016, Defendants required Ventura to complete an intensive multi-week remote training program followed by a one-day in-person training session. In exchange for her completion of the multi-week remote training program, Ventura received a $100 flat fee. In exchange for her completion of the one-day in-person training session, Ventura received another $100 flat fee. Defendants' payment of these two fees bore no relation to the number of hours Ventura spent performing work during this training

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

2

COMPLAINT

period. Ventura received no other compensation for the work she performed during this training period.

8.      Additionally, Defendant has paid Ventura a monthly flat "servicing fee" ranging from $25 (for Ventura's first year of work as an LCC for Defendants) to $32 (for Ventura's fourth year of service, beginning in approximately January 2020) for each au pair to which she was assigned for each month she supervised said au pair since Defendants began assigning Ventura au pairs after she completed her training in or around May 2016. From approximately April 2016 to April 2017, for example, Ventura received $26 for each au pair under her supervision who was assigned to a host family for that service month. Accordingly, during that period, Ventura would receive $26 for her supervision and management of the relevant au pair and coordination with the host family to which the au pair was assigned regardless of whether the particular au pair/host family assignment required 1 hour or 20 hours to sufficiently supervise and manage that month.

9.      At all relevant times, Defendants have also compensated Ventura via flat fees in the form of sales and marketing "bonuses." As detailed, e.g., in Defendants' Sales and Marketing Bonus Guidelines, Defendants offered to compensate Ventura for work performed in furtherance of Defendants' desire to recruit, enroll and retain new host families, LCCs and au pairs.

10.      On information and belief, Defendants maintained five such sales and marketing "bonuses" for LCCs:

    a.   _Sales Bonus:_ LCCs receive $135 and one "sales point" if they (1) call
         prospective new host-family customers (with leads generated by Defendants)
         within 24 hours of receiving the lead (also known as the "lead submission");
         (2) follow on their initial "welcome call" with another telephone call and an
         email to the prospective host family within 72 hours of receiving the lead
         submission; (3) conduct additional outreach to the prospective host family via
         telephone and email within seven days of the lead submission; (4) conduct
         additional telephone and email outreach to the prospective host family within
         14 days of the lead submission; (5) conduct further outreach via telephone and

COMPLAINT

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

email to the prospective host family every three months thereafter; (6) ensure Defendants "actualize" the placement via the host family's enrolling in Defendants' au pair services program, paying a program fee to Defendants, and physically welcoming the newly assigned au pair into their residence; (7) enter detailed documentation of their sales-bonus recruiting and coordination work in Defendants' Salesforce account management database; (8) enter information into said Salesforce database reflecting that they had made contact with the relevant prospective host family prior to the family's registration with Defendants, and that some of said contact had occurred within 90 days of the family's registration date; *and* (9) remain employed by Defendants and the LCC assigned to the particular lead at the time Defendants "actualize" the placement via the host family's enrolling in Defendants' au pair services program, paying a program fee to Defendants, and physically welcoming the newly assigned au pair into their residence.

b. <u>*Repeat Bonus*</u>: LCCs receive a $150 "repeat bonus" when (1) a host family that has already been paired with an au pair under an LCC's supervision for more than 30 "program weeks"[1] applies to take on a new au pair and pays a full program fee; (2) the LCC enters detailed documentation of their repeat-bonus work in Defendants' Salesforce account management database; (3) the LCC enters information into said Salesforce database reflecting that they had made contact with the relevant host family prior to the family's registration with Defendants, and that some of said contact had occurred within 90 days of the family's registration date; *and* (4) the LCC remains active and assigned to service the host family in question at the time Defendants "actualize" the new

---

[1] For "repeat bonus" purposes, Defendants consider host families that are enrolling for an additional au pair placement but have not already been enrolled in the au pair program for more than 30 program weeks to be "transition families" rather than "repeat families."

COMPLAINT

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

placement when the host family re-enrolls in Defendants' au pair services program, pays the program fee to Defendants, and physically welcomes the newly assigned au pair into their residence.

c. *Actual Bonus*: LCCs receive a $75 "actual bonus" when (1) a new host family "actualizes" by enrolling in Defendants' au pair services program, paying a program fee to Defendants, and physically welcoming the newly assigned au pair into their residence; (2) the host family completes Defendants' required two-week new host family orientation; (3) the LCC enters detailed documentation of their marketing-bonus recruiting and coordination work in Defendants' Salesforce account management database; (4) the LCC enters information into said Salesforce database reflecting that they had made contact with the relevant prospective host family prior to the family's registration with Defendants, and that some of said contact had occurred within 90 days of the family's registration date; *and* (5) the LCC remains employed by Defendants and assigned to the particular lead at the time the host family "actualizes" by physically welcoming the assigned au pair into their residence and pays Defendants a program fee for the services of the newly assigned au pair. LCCs also receive a $75 "actual bonus" for every year a host family reenlists for Defendants' au pair services program, with the host family's anniversary of enrollment triggering payment of such a repeat "actual bonus."

d. *Referral Bonus*: LCCs receive a $200 bonus for every new LCC they refer to become employed by Defendants once (1) the new LCC enters into a contract with Defendants; (2) the new LCC completes Defendants' LCC training program; (3) Defendants begin assigning host families who have "actualized" in Defendants' au pair services program by enrolling in Defendants' au pair

COMPLAINT

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

services program, paying a program fee to Defendants, and physically welcoming the newly assigned au pair into their residence; (4) and the referring LCC remains employed by Defendants at the time requirements (1) through (3) are satisfied.

11. For all of the above-specified payment types, Ventura and other LCCs received and continue to receive no compensation whatsoever for the time spent performing such work for Defendants unless all relevant requirements of the respective payment type are met.

12. During Ventura's onboarding and training, Defendants repeatedly and aggressively encouraged Ventura to perform the marketing and recruitment work for which Defendants had established the above-detailed sales and marketing bonus structure. Defendants represented to Ventura during this period and further into Ventura's employment with Defendants that it was vital to LCCs' career prospects with Defendants to regularly perform such work, even though Defendants offered no guaranteed compensation in exchange for Ventura's performance of these marketing and recruitment services.

13. Ventura thereafter complied with Defendants' recommendations and performed hundreds of hours of work in furtherance of Defendants' marketing and recruitment goals. However, in many instances in which her efforts failed to yield a new client or LCC recruit for Defendants—or when they did, but Defendants refused to pay Ventura the specified "bonus" compensation on grounds that one of the technicalities specified under Defendants' sales and marketing bonus guidelines had gone unmet (e.g., if Ventura spent weeks or months recruiting a new host family, matching them with an au pair, and arranging travel for the au pair, but the host family was reassigned to another LCC before the au pair physically entered the family's residence)— she received no compensation whatsoever for the time she spent working on the work performed for Defendants.

14. This was not the only avenue through which Ventura performed work for which she was not compensated at all: Defendants also did not pay Ventura for the time when she was

COMPLAINT

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

performing duties that did not fit within any of the defined tasks that were potentially compensable via any of the flat fees established under Defendants' compensation scheme.

15.     Ventura was required to ideate, design and execute approximately 12 special events per year for the au pairs under her supervision and management. While Ventura did receive partial reimbursement for expenses incurred during the planning and execution of some of these mandatory events, Defendants did not compensate Ventura for the considerable amount of time required to plan and deliver these events for her dozens of au pairs and host family members.

16.     Ventura was required on multiple occasions to house au pairs in her private residence during interim periods when they were either waiting to move in with a host family or to depart the United States for their home country following the end of a placement with a host family. In such situations, while Ventura again received nominal reimbursement for some of the expenses she and her family incurred while hosting the au pairs, Defendants did not pay Ventura for the typically substantial amount of time she was required to spend transporting and counseling the au pair during the stay, among other related work-related time expenditures.

17.     In sum, at all times material to the instant matter beginning in or around late April 2016 to today's date, because Ventura's compensation was based solely on her completion of defined tasks, without regard for the time the completion of each task required, Ventura was not compensated for the actual hours she spent working on the assigned tasks.

18.     As a result, Defendants have failed to pay Ventura wages for all hours worked, including, but not limited to, time spent completing mandatory remote training; time spent traveling to and from and completing mandatory in-person training; time spent traveling to and from and completing frequent in-person meetings with managed au pairs and host families; time spent traveling to and from and attending mandatory annual national Cultural Care LCC conferences; time spent planning, coordinating, traveling to and from, and executing dozens of required monthly special events for au pairs and, in some cases, host families; time spent entering supervision case updates and related information into multiple computerized databases maintained by Defendants; time spent communicating about au pair casework with Cultural Care

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

COMPLAINT

workers in different classifications who were properly classified as employees; and time spent coordinating and supervising homestays in Ventura's own home for au pairs who were waiting to begin a new host family placement or to depart the United States following the end of a host family placement.

19. When Defendants did compensate Ventura for her work performed, Defendants used a piece-rate system to determine the wage rates it paid to Ventura. In so doing, Defendants failed, and continues to fail, to compensate Ventura for all hours worked at the required rates under state law as well as for rest periods due under state law.

20. The wages, hours and working conditions of employees such as Ventura are regulated by Industrial Welfare Commission Wage Order 4-2001, Cal. Code Regs. tit. 8, § 11040 ("Wage Order 4") and various provisions of the California Labor Code ("Labor Code").

21. Labor Code § 1197 and Wage Order 4, § 4 require employers to pay workers at least minimum wage for each individual hour worked or portion thereof. See also, *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314; *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36.

22. Wage Order 4, § 9(B) requires employers to pay employees who provide and maintain their own tools at least two (2) times the state minimum wage for each and every hour worked.

23. Labor Code §§ 510 and 1194 require that an employee be compensated at the rate of no less than one and one-half times the regular rate of pay for that employee for all hours worked in excess of 8 hours in one day and/or 40 hours in one workweek.

24. During the time period relevant to the instant action, Ventura has regularly provided and maintained her own tools, which she necessarily used as a direct consequence of discharging her duties as an LCC for Defendants.

25. However, Defendants have serially failed to compensate Ventura at a rate equal to or greater than the applicable minimum wage throughout the relevant time period.

COMPLAINT

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

26. Ventura has also performed more than 8 hours of work in a workday and/or more than 40 hours in a workweek during the time period relevant to this action.

27. However, Defendants have again failed to properly compensate Ventura at the applicable overtime rate for this work.

28. Moreover, under the terms of Wage Order 4, § 12 and Labor Code § 226.7, employees are entitled to two uninterrupted paid 10-minute rest periods during each eight-hour shift, and employers are required to provide an employee with one additional hour of pay at the employee's regular rate to compensate for each day when the employer failed to provide all earned rest periods.

29. Here, Defendants have consistently failed to provide Ventura with all paid rest breaks to which she was legally entitled throughout the relevant time period or for compensation for said breaks.

30. Additionally, Labor Code § 226(a) mandates that an employer shall, at the time of each payment of wages, provide each employee with a written itemized statement, including, but not limited to, (1) gross wages earned, (2) hours worked, (3) the number of piece-rate units earned, and (4) each applicable piece rate. Wage Order 4, § 7(A)(6) imposes similar requirements as well.

31. During the time period relevant to this action, Defendants provided Ventura with monthly statements that reflected the number and type of service tasks performed for which Defendants paid piece rates for that service month (generally running from the 16th day of one month to the 15th day of the subsequent month). However, these statements were insufficient to qualify as accurate itemized statements, as they failed to show the actual hours worked, thus failing to satisfy the requirements established under Labor Code §§ 226(a) and 1174(d) and Wage Order 4, § 7(A)(6).

32. Finally, California Business and Professions Code §§ 17200 *et seq*. prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practice.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

COMPLAINT

33. In committing the aforementioned violations of state law through their treatment of Ventura, Defendants committed unlawful and unfair business practices as defined by Business & Professions Code § 17200.

## II. PARTIES

34. Defendant Cultural Care USA is a California corporation and is a "person" as defined in Labor Code § 18, and California Business and Professions Code § 17201. In addition, Defendant is an "employer" as that term is used in the Labor Code and in the California Industrial Welfare Commission's wage orders regulating wages, hours, and working conditions. Cultural Care USA promotes itself as the largest au pair agency in the United States.

35. Defendant EF Education First, of which Cultural Care USA is a subentity, is a California corporation and is a "person" as defined in California Labor Code § 18, and California B&P Code" § 17201. In addition, Defendant is an "employer" as that term is used in the Labor Code and in the California Industrial Welfare Commission's wage orders regulating wages, hours, and working conditions. In addition to its Cultural Care USA operations, EF Education First maintains brick-and-mortar facilities throughout the state. These include Hult International Business School in San Francisco; English-language immersion programs in San Francisco, Santa Barbara, Los Angeles and San Diego; a boarding school in Pasadena; and summer language camps in San Luis Obispo, Long Beach, Monterey, Thousand Oaks and Ventura.

36. Paula Ventura is employed by Defendants as a Local Childcare Coordinator. Ventura has worked for Defendants in this role since approximately April 29, 2016. Ventura currently resides in Contra Costa County, and since approximately April 29, 2016, she has performed a substantial amount of her work for Defendants in Contra Costa County.

## III. JURISDICTION AND VENUE

37. This Court has subject matter jurisdiction over this action, as the claims involve alleged violations of California law.

38. Venue is appropriate in the County of Contra Costa, and this Court has personal jurisdiction over Defendants by reason of the facts that (a) Defendants have transacted and

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

COMPLAINT

conducted substantial business in the State of California and in the County of Contra Costa; (b) the acts alleged herein occurred in the State of California, including in the County of Contra Costa; (c) Ventura's injury occurred in the State of California and the County of Contra Costa; and (d) the events giving rise to the claims at issue in this lawsuit arose within the County of Contra Costa in California.

## IV.   FIRST CAUSE OF ACTION

### (FAILURE TO PAY FOR EACH HOUR WORKED)
### (Labor Code §§ 218, 510, 1182.12, 1194, 1194.2, 1197, 1197.1
### Wage Order 4, §§ 3, 4, 9B, 20)

39.    Ventura re-alleges and incorporates paragraphs 1 through 38, inclusive, as though fully set forth herein.

40.    California law requires an employer to compensate each employee at no less than the appropriate minimum wage for each and every individual hour worked.

41.    California law does not allow an employer to meet its minimum wage obligations by averaging weekly pay over the total hours worked in a given week. *Armenta v. Osmose*, 135 Cal.App.4th 314, 324 (concluding that "the [federal] model of averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation under California law is inappropriate" and clarifying that "[t]he minimum wage standard affixes to each hour worked by Defendants for which [Ventura] was not paid").

42.    The California courts have found that piece-rate systems that fail to compensate employees for each individual hour worked violate California law. *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36.

43.    During the statutory period, Defendants have maintained a policy and practice of requiring Ventura to provide and maintain her own tools. For example, Defendants have required Ventura to regularly enter information into multiple electronic portals using her own computer and to use her own car to conduct regular visits to host family residents, to transport Defendants' au pairs, and to coordinate and execute monthly events for Defendants in fulfillment of Ventura's job duties. In addition to being required by Defendants, Ventura's use of such tools were and are

COMPLAINT

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

necessary for the performance of her job. Defendants have thus been obligated under Wage Order 4, § 9(B) to compensate Ventura at the rate of twice the applicable minimum wage, for each hour worked. As both Cultural Care and EF Education First are, and have been for the entire relevant time period, employers with at least 26 employees, the rate of twice the applicable minimum wage pursuant to Labor Code § 1182.12(a) was $20.00 per hour from when Ventura began working as an LCC for Defendants until December 31, 2016; $21.00 per hour from January 1, 2017 until December 31, 2017; $22.00 per hour from January 1, 2018 until December 31, 2018; $24.00 from January 1, 2019 until December 31, 2019; and $26.00 from January 1, 2020 to today's date. This rate will again increase, this time to $28.00, on January 1, 2021.

44. Under Defendants' payment system, Defendants failed to pay Ventura at least minimum wage for all hours worked because Defendants paid Ventura only for certain tasks to which Defendants had assigned flat-rate values and did not pay Ventura for tasks that did not have flat-rate value.

45. On some occasions, the failure to pay for hours worked occurred because of time and tasks that had no piece-rate value, including, but not limited to, traveling to and from meetings, interviews, events, and other required on-location assignments; entering data into Defendants' software programs; transporting au pairs; performing domestic tasks for au pairs assigned to reside with Ventura while awaiting transfer to new host family assignments or to depart the United States; and various administrative and clerical tasks.

46. On some occasions, the failure to pay for hours worked has occurred due to unpaid time traveling to and from trainings out of town.

47. Labor Code § 1194 provides for a private right of action to recover wages for hours worked but not compensated.

48. Defendants failed to pay Ventura wages for all hours worked in violation of Labor Code § 1197 and Wage Order 4, §§ 3, 4 and 9(B). Some hours have not been compensated at the correct rate, and other hours have not been compensated at all.

49. Ventura has worked more than eight (8) hours in a day and/or forty (40) hours in a

COMPLAINT

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

week without receiving any compensation for that time and without overtime compensation at the rate of one and one-half (1½) times her weekly regular rate in violation of Labor Code §§ 510, 1194 and IWC 4, § 3.

50.    Labor Code § 218 provides for a private right of action to recover wages under the Labor Code. Ventura seeks to recover unpaid wages and penalties directly under § 218.

51.    Ventura seeks to recover compensation for time worked but not paid, and attorneys' fees and costs under Labor Code § 1194.

52.    Ventura seeks to recover penalties as imposed by Labor Code § 1197.1 for Defendants' intentional failure to pay the minimum wage.

53.    Ventura seeks to recover attorneys' fees and costs incurred in recovering unpaid but earned wages pursuant to Labor Code § 218.5.

54.    Ventura seeks liquidated damages under Labor Code § 1194.2.

55.    Labor Code § 218.6 provides for interest on all due and unpaid wages in any action brought for the nonpayment of wages. Ventura seeks to recover interest on all wages due under Labor Code §§ 218.6 and 1194.

56.    Ventura seeks to recover penalties under Wage Order 4, § 20 for violations of Wage Order, § 4 in the amounts of $50 for the first violation and $100 for each subsequent pay period in which the employee is underpaid.

Wherefore, Ventura prays for judgment as set forth below.

## V.    SECOND CAUSE OF ACTION

### (FAILURE TO PROVIDE PAID REST BREAKS)
### (Wage Order 4, § 12, Labor Code §§ 226.7, 1197)

57.    Ventura re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 56 above, inclusive, as though fully set forth at length herein.

58.    Wage Order 4, § 12 requires employer to authorize and permit paid rest breaks at a rate of ten minutes for every four hours worked or greater fraction thereof. For an eight-hour shift, for example, an employer must provide at least two 10-minute breaks.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

13

COMPLAINT

59.     While Ventura has generally not worked according to a fixed-shift schedule, she has worked many days of four or more hours during the relevant time period.

60.     Labor Code § 226.7 and Wage Order 4, § 12 require the payment of compensation for the failure to provide paid rest breaks in accordance with the applicable Wage Order in the amount of one additional hour of pay for each work day that the employer fails to provide the mandated rest break(s).

61.     At all relevant times during the statutory period, Defendants have frequently failed to provide Ventura with paid rest breaks as required.

62.     Defendants' failure to provide paid rest breaks in accordance with Wage Order 4, § 12 entitles Ventura to the remedy provided in Labor Code § 226.7 and Wage Order 4, § 12 for each work day that Defendants failed to provide with all the paid rest periods required by the Wage Order.

63.     In addition, for each day rest breaks were taken but compensation was not provided, Ventura is entitled to 10 minutes of compensation at her regular rate for each rest break taken but not paid. Labor Code § 226.2(a)(3) provides that employees shall be compensated for rest and recovery periods at a regular hourly rate that is not less than the higher of (a) an average hourly rate determined by dividing the total compensation for the workweek, exclusive of compensation for rest and recovery periods and any premium compensation for overtime, by the total hours worked during the workweek, exclusive of rest and recovery periods, or (b) the applicable minimum wage.

64.     Ventura seeks to recover attorneys' fees and costs incurred in recovering unpaid but earned wages pursuant to Labor Code § 218.5.

65.     Labor Code § 218 provides Ventura with a private right of action to recover wages under the Labor Code. Payment for rest breaks taken but not paid at any rate are wages. The payments owed to Ventura for paid rest breaks not provided are premium wages under Labor Code § 226.7.

66.     Labor Code § 218.6 provides for an award of interest on all due and unpaid wages.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

14

COMPLAINT

Ventura seeks to recover interest on all wages due under the statute.

67.     Ventura is entitled to and hereby seeks premium pay for paid rest breaks not provided, wages for rest breaks taken, interest on the unpaid amounts, and an award of attorneys' fees and costs all in amounts to be proven at trial or by motion.

68.     Wage Order 4, § 20(A) provides for civil penalties for violations of the Wage Order. As a result of Defendants' violation of Wage Order 4, §§ 4 and 12, Ventura is entitled to and hereby seeks civil penalties in the amount of $50 for the first violation and $100 for each subsequent pay period.

## VI.     THIRD CAUSE OF ACTION

### (FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS)
### (Labor Code §§ 226, 1174, 2810.5, Wage Order 4, § 7)

69.     Ventura re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 68 above, as though fully set forth at length herein.

70.     Labor Code § 226(a) mandates that every employer shall provide each employee on a semi-monthly schedule or at the time of each payment of wages with an accurate written itemized statement. Such wage statement must include substantial detailed information, including, but not limited to, total hours worked, each wage rate applied, the number of piece-rate units earned, all applicable piece rates if the employee is paid on a piece-rate basis, and the name and address of the legal entity that is the employer.

71.     Labor Code § 1174(d) requires the employer to keep payroll records showing hours worked, wages paid, the number of piece-rate units earned, and the applicable piece rate paid to employees.

72.     Similar requirements as those found in Labor Code §§226(a)(3) and 1174(d) are imposed under Wage Order 4, § 7. The Wage Order also requires an accurate record of each work period and meal period taken.

73.     Defendants' monthly wage statements to Ventura failed, and continue to fail, to show the total hours worked, each wage rate applied, all numbers of piece-rate units earned, all

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

COMPLAINT

applicable piece rates, and the name and address of the legal entity that is the employer.

74.     As a result of Defendants' knowing and intentional failure to comply with the provisions of Labor Code §§ 226(a)(3) and 1174(d), Ventura has been deprived of wage-and-hour information and wages to which she is entitled by law, thus establishing injury under Labor Code § 226(e)(2).

75.     Ventura is entitled to and seeks the remedy provided in Labor Code § 226(e): the greater of all actual damages $50.00 for the initial pay period in which the violation occurs and $100.00 for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000.00, and an award of costs and reasonable attorneys' fees.

76.     Additionally, Wage Order 4, § 20(A) provides for civil penalties for violations of the Wage Order. As a result of all Defendants' serial violations of Wage Order 4, § 7, Ventura is entitled to and hereby seeks civil penalties in the amount of $50.00 for the first violation and $100.00 for each subsequent pay period.

77.     Finally, Ventura seeks injunctive relief against Defendants to ensure future compliance with the law as well as the ordered payment of attorneys' fees under Labor Code §§ 226(g).

78.     Wherefore, Ventura prays for judgment as set forth below.

## VII.     FOURTH CAUSE OF ACTION

### (FAILURE TO REIMBURSE FOR EXPENSES INCURRED BY EMPLOYEE IN DIRECT CONSEQUENCE OF THE DISCHARGE OF DUTIES) (Labor Code § 2802)

79.     Ventura re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 78 above, as though fully set forth at length herein.

80.     Labor Code § 2802(a) establishes that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

81.     California Labor Code § 2802(b) expressly authorizes the award of interest to be

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

COMPLAINT

added to an award for "reimbursement of necessary expenditures." Such interest shall "accrue from the date on which the employee incurred the necessary expenditure or loss" in question.

82. Additionally, Labor Code § 2802(c) includes within the definition of "necessary expenditures and losses "all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

83. Ventura necessarily incurred substantial expenditures in direct consequence of executing her assigned job duties as an LCC for Defendants or in obedience to the directions of Defendants during the entire relevant time period. These included, but were not limited to, the purchase of gasoline, oil, and other goods and services to maintain Ventura's vehicle used for her frequent travels for work within Contra Costa County; the purchase and use of Ventura's computer and smartphone Ventura necessarily used regularly while executing her job duties for Defendants; and the purchase of food, drinks, and entertainment provided to au pairs and host families during the frequent social and safety events Ventura was required to produce.

84. While Defendants did provide partial reimbursement to Ventura for a minority of the mandatory events, such reimbursement typically did not suffice to cover all necessarily incurred expenses for those events. Additionally, Defendants provided no reimbursement at all for expenses necessarily incurred by Ventura at most of these events, just as Defendants provided no reimbursement for the vast majority of Ventura's other expenses incurred in direct consequence of her discharge of her duties as an LCC.

Wherefore, Ventura prays for judgment as set forth below.

## VIII.   FIFTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW)
### (Business & Professions Code §§ 17200, et seq.)

85. Ventura re-alleges and incorporates paragraphs 1 through 84, inclusive, as though set forth fully herein.

86. Business and Professions Code §§ 17200 *et seq*. prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practice.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

17

COMPLAINT

**WEINBERG, ROGER &
ROSENFELD**
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

87.     During the statutory period, Defendants committed unlawful acts as defined by Business & Professions Code § 17200. Defendants have engaged in unlawful and unfair business practices including, but not limited to, violations of:

a.     Labor Code §§ 510, 1194, 1997 and Wage Order 4, §§ 3, 4, 9;

b.     Wage Order 4, § 12;

c.     Labor Code § 226.7;

d.     Labor Code § 226(a);

e.     Labor Code § 2802; and

f.     Labor Code § 204.

88.     Defendants' violations of these laws serve as unlawful predicate acts for purposes of Business & Professions Code § 17200, and remedies are provided therein under Business & Professions Code § 17203. Ventura has suffered direct economic injury in that she has not been paid all wages and compensation due.

89.     The acts and practices described in this Complaint constitute unlawful, unfair and fraudulent business practices, and unfair competition by Defendants within the meaning of Business and Professions Code §§ 17200 *et seq*.

90.     Business & Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition and to which that person has an ownership interest. Ventura is entitled to restitution pursuant to Business & Professions Codes §§ 17203 and 17208 for all wages and expense reimbursements Defendants have unlawfully withheld from her. Ventura will, upon leave of the Court, amend this Complaint to state such amounts when they become ascertained.

91.     Ventura's success in this action will enforce important rights affecting the public interest. Ventura seeks and is entitled to unpaid wages at the appropriate regular and overtime rate, unpaid compensation for missed rest periods, unpaid reimbursement for qualifying expenses, statutory penalties for failures to provide appropriate rest breaks and wage statements, injunctive relief, declaratory relief, and any other remedy owing to Ventura.

COMPLAINT

92.     Injunctive and declaratory relief is necessary and appropriate to prevent Defendants from repeating the wrongful and illegal business practices alleged above.

93.     To prevent Defendants from profiting and benefiting from their wrongful and illegal acts, it is appropriate and necessary to enter an order requiring Defendants to restore Ventura monies that are owed.

94.     An actual controversy has arisen and now exists relating to the rights and duties of the parties as to whether Defendants must pay wages for each hour worked and at what rate, pay wages and statutory penalties for unpaid rest periods, provide reimbursement for qualifying expenses, and pay statutory penalties for failing to provide legally sufficient wage statements to Ventura.

95.     Ventura herein takes upon herself enforcement of these laws and lawful claims. Pursuing this action carries a significant financial burden, and it would be against the interests of justice to penalize Ventura by forcing her to pay attorneys' fees from the recovery in this action. The enforcement of the state wage-and-hours laws will confer a public benefit, as the failures to provide appropriate wages for all hours worked, paid rest breaks, reimbursement for employees' qualifying expenses, and itemized wage statements are all actions that violate the state's public policy of maintaining and robustly enforcing wage and rest protections for employees. Therefore, attorneys' fees are appropriate pursuant to California Code of Civil Procedure § 1021.5 and Labor Code §§ 218.5, 226 and 1194, as well as any other applicable statute.

Wherefore, Ventura prays for judgment as set forth below.

## IX.     PRAYER FOR RELIEF

Ventura prays for judgment as follows:

1.     For injunctive relief prohibiting Defendants, their officers, agents and all those acting in concert with them from committing these violations herein alleged;

2.     For an award of damages in an amount according to proof with interest thereon;

COMPLAINT

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

3. For an award of restitution and wages according to proof under Labor Code §§ 226.7, 510, 1182.12, 1194, 1197 and Business & Professions Code §§ 17200 and 17203 and any other applicable provision;

4. For penalties under Labor Code §§ 226, 1197.1, Wage Order 4, § 20, and any other applicable provisions;

5. For interest under Labor Code §§ 218.6, 1194, and any other applicable provisions;

6. For liquidated damages under Labor Code § 1194.2;

7. For an award of reasonable attorneys' fees, costs and interest thereon pursuant to Labor Code §§ 218.5, 226, 1194, CCP § 1021.5, and any other applicable provision; and

8. For such other and further relief as the Court deems just and proper.

Dated: December 23, 2020

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By: _____
ANNE I. YEN
BENJAMIN J. FUCHS
Attorneys for Paula Ventura

149212\1132126.v1

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

COMPLAINT

# EXHIBIT 2

# *CIVMSC20-02639, VENUTURA VS. CULTURAL CARE*

CA Superior - Contra Costa

ContraCosta

**This case was retrieved on 02/04/2021**

## Header

**Case Number:** CIVMSC20-02639
**Date Filed:** 12/24/2020
**Date Full Case Retrieved:** 02/04/2021
**Status:** Unknown
**Misc:** (65) OTHER CIVIL COMPLAINT ; (CIVMSC) Martinez Civil

## Participants

| Litigants | Attorneys |
|---|---|
| PAUL VENTURA | FUCHS, BENJAMIN J. |
| **PLAINTIFF** | PLAINTIFF |
| ParticipantStatus: First Paper Fee Paid | 1375 55TH STREET EMERYVILLE, CA 94608 (510) 337-1001 |
| ComplaintNumber: 1 | |
| CULTURAL CARE USA,EF EDUCATION FIRST | Unrepresented |
| **DEFENDANT** | DEFENDANT |
| ParticipantStatus: Serve Required (WaitS) | CULTURAL CARE USA,EF EDUCATION FIRST |
| ComplaintNumber: 1 | |

## Complaints

| Nbr | Type | File Date | Status |
|---|---|---|---|
| 1 | COMPLAINT | 12/24/2020 | ACTIVE |

## Minutes

| Type | Details |
|---|---|
| Reference Action | COMPLAINT FILED. SUMMONS IS ISSUED |
| | 12/24/2020 |

## Pending Hearings

| Date | Department | Details |
|---|---|---|

CIVMSC20-02639, VENUTURA VS. CULTURAL CARE

| Date | Department | Details |
|---|---|---|
| 05/12/2021 8:30 AM | | CASE MANAGEMENT CONFERENCE |

# Proceedings

| Date | # | Proceeding Text | Details |
|---|---|---|---|
| 12/24/2020 | 1 | CASE HAS BEEN ASSIGNED TO DEPT. 07 | |
| 12/24/2020 | 2 | COMPLAINT FILED. SUMMONS IS ISSUED | Disposition: Not Applicable |
| 12/24/2020 | 3 | CLERK`S TICKLER TO CHECK FOR PROOF OF SERVICE WAS SET FOR 3/01/21 AT 7:00 IN DEPT. 07 | |
| 12/24/2020 | 4 | CASE MANAGEMENT CONFERENCE WAS SET FOR 5/12/21 AT 8:30 IN DEPT. 07 | |
| 12/24/2020 | 5 | COLOR OF FILE IS YELLOW | Disposition: Not Applicable |
| 12/24/2020 | 6 | ORIGINAL SUMMONS ON COMPLAINT FILED 12/24/2020 OF PAUL VENTURA FILED | Disposition: Not Applicable |
| 12/24/2020 | 7 | CASE ENTRY COMPLETE | Disposition: Not Applicable |
| 03/01/2021 | 8 | CHECK FOR PROOF OF SERVICE | |
| 05/12/2021 | 9 | CASE MANAGEMENT CONFERENCE | |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

End of Document

# EXHIBIT 3

**Dr. Shirley N. Weber**
**California Secretary of State**

 Business Search - Results

The California Business Search is updated daily and reflects work processed through Thursday, February 4, 2021. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

- Select an entity name below to view additional information. Results are listed alphabetically in ascending order by entity name, or you can select a column title to change the sort order.
- To refine the search results, enter a word or a string of words in the "Narrow search results" box. The "Narrow search results" will search on all fields of the initial search results.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on requesting a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

Results of search for Corporation Name keyword "cultural care" returned 5 entity records (out of 5 records found).

Show [ 10 ] entities per page

Narrow search results: [                    ]

| Entity Number ⇅ | Registration Date ⇅ | Status ⇅ | Entity Name ⇅ | Jurisdiction ⇅ | Agent for Service of Process ⇅ |
|---|---|---|---|---|---|
| C0809360 | 02/23/1977 | FTB SUSPENDED | **COUNTRY CLUB DAY CARE AND CULTURAL CENTER, INC.** | CALIFORNIA | |
| C0692518 | 11/07/1973 | DISSOLVED | **CROSS CULTURAL CHILD DEVELOPMENT DAY CARE CENTER, INC.** | CALIFORNIA | SANDRA HIGHTOWER |
| C3089254 | 02/25/2008 | ACTIVE | **CULTURAL CARE, INC.** | MASSACHUSETTS | C T CORPORATION SYSTEM (C0168406) |
| C1340400 | 05/22/1985 | DISSOLVED | **MURRIETA EDUCATIONAL, CULTURAL AND CARE ASSOCIATION** | CALIFORNIA | LEONARD KAUFMAN |
| C0629661 | 07/21/1971 | FTB SUSPENDED | **RUSSIAN RIVER MULTI-CULTURAL CHILD CARE CENTER, INC.** | CALIFORNIA | |

Showing 1 to 5 of 5 entities

| Previous | 1 | Next |

**Modify Search**    **New Search**

EXHIBIT 4

Local Childcare Consultant Agreement

This following is the engagement agreement (the "Agreement") between you and Cultural Care, Inc. ("CCAP") concerning your independent services as a Local Childcare Consultant ("LCC") for the CCAP Program in your area. This Agreement extends from the date of your signature (below) until the contract is terminated by either party.

CCAP is pleased that you have chosen to help our dedicated team of program representatives in the recruiting of host families nationwide and the support of their au pair placements. We appreciate your efforts and your commitment to program quality.

As an LCC for CCAP, you will serve as the interface between CCAP and the au pairs and host families, and you agree to the following:

1. Compliance with Government Regulations.
To read, understand and comply with the U.S. State Department Regulations governing the au pair program, a copy of which has been provided to you (the "Regulations.")

2. Host family recruitment, screening and orientation.
To screen and orient host family participants in accordance with the Regulations.

3. Supervision of and support for current program participants.
To maintain ongoing personal contact with and assist current au pairs and host families within your designated region in accordance with the Regulations; to facilitate the replacement of au pairs in transition; and to mediate au pair/host family problems that may arise.

4. Independent Contractor
You will be acting as an independent contractor under this Agreement, and nothing in this Agreement or your engagement shall be construed as creating an employer-employee, agency, partnership, joint venture, or any other legal relationship between you and CCAP. As an independent contractor, you will not be eligible to participate in any of CCAP's employee benefit plans, will not be eligible to receive benefits otherwise provided to CCAP employees, and will be solely responsible for any and all tax payments in respect of the fees paid hereunder. Because you will be paid as an independent contractor, CCAP's payments to you will not be subject to withholding for income taxes, Social Security, unemployment or the like. You will likewise not be eligible for unemployment compensation at the termination of this engagement. You will be responsible for providing, at your own expense, any tools, equipment or facilities you may require for the performance of your duties. You will determine, in accordance with the Regulations as they may apply, the place or places where you will perform and the hours during which you will render services hereunder, subject to such general requirements by CCAP (such as the requirement to meet deadlines and attend scheduled meetings) as may be reasonably necessary for the fulfillment of your duties hereunder. You will be free to accept engagements from others during the term of this Agreement, so long as such engagements do not interfere with your ability to perform your work for CCAP.

5. Compensation.
The compensation due to you under this Agreement will vary (depending upon your investment of time, effort and resources), and will be paid as follows:

- Marketing commission - for each new host family accepted by CCAP and marketed through your efforts for the duration of your relationship with CCAP. To qualify, the family must host an au pair and must either have paid for the program services in full or have been accepted onto the Extended Payment Plan.

- Repeat commission - for each host family in your area who is a returning CCAP participant with the program during your relationship with CCAP, and who has either paid for the program services in full or been accepted onto the Extended Payment Plan.
- Sales commission- for each new host family for whom you receive a lead through CCAP and you successfully bring on to the program.
- Interview fee - for each prospective or repeating host family who has submitted a completed application form whom you interview as a prospective CCAP participant.
- Actuals commission - for each new or repeating host family who welcomes an au pair on a new program term in your area.
- The opportunity to earn travel rewards and discounts through your self-directed marketing initiatives.
- Monthly flat fee for your services based on the number of au pairs and host families you are supervising in your area in a given month.  Such payments will be made on the 26th of each month.
- Your precise commission and fee amounts are current and available via your online account.   All eligibility requirements must be met in order to receive payment.  This information is subject to adjustment from time to time going forward upon notice to you.


6.   Expenses.
You are responsible for all of your business expenses, including your own office, equipment, marketing and other business-related costs. CCAP may occasionally reimburse certain limited expenses arising in au pair 'emergency' situations.

7.   Training and program guidelines.
CCAP will assist you in fulfilling your responsibilities by holding an initial training meeting to guide your work at no cost to you, and by providing you with online course materials.  You will be expected to adhere to general program guidelines and to comply strictly with the Regulations.

8.   Substitutability/Assignment.
It is understood that you will conduct all meetings, interviews, orientations and other in-person engagements required by the Regulations personally as the Local Childcare Consultant.  You may engage associate personnel to assist you in functions that are not governed by  the Regulations, provided such engagements and delegations are in all circumstances consistent with the Regulations and the achievement of CCAP's general program objectives as reflected in this Agreement.

9.   Insurance.
Notwithstanding the fact that LCCs are not employees, we have included the LCC as an additional insured on our liability policy. However, you acknowledge that CCAP does not maintain any worker's compensation, disability or other form of insurance on behalf of you or your associates, and that it is thus your sole responsibility to obtain and keep in force such insurance coverages as you determine to be appropriate and/or as required by your state of residence.  You assume all risk in connection with the adequacy of any and all such insurance which you elect to obtain.

10.  Confidentiality.
In connection with the performance of your duties, you will be exposed to confidential information regarding CCAP's business, including but not limited to sales and marketing information, methods of doing business, research and development, know-how, host families, au pairs, training materials, trade secrets, computer programs, finances and other confidential and proprietary information belonging to CCAP (hereinafter collectively referred to as "Confidential

Information"). You shall use the Confidential Information solely for the purpose of performing your duties under this Agreement. You agree not to, in any manner or form, disclose, reproduce, copy, provide or otherwise make available to third parties, in whole or in part, the Confidential Information or any derivative material. At all times during and subsequent to your affiliation with CCAP, you agree to keep in strictest confidence and trust CCAP's Confidential Information that is disclosed to you or to which you have access. You will not use or disclose the Confidential Information without the written consent of CCAP, except as may be set forth herein or as may be necessary in the ordinary course of performing services for and on behalf of CCAP.

11. Termination.

CCAP reserves the right to terminate this Agreement, without cause or notification, at its sole discretion, should your performance as an LCC be deemed unsatisfactory for any reason, including without limitation your failure to comply with any U.S. Department of State requirements. Immediately following the termination of this Agreement, by either party, you agree to return to CCAP all au pair, family and program records in your possession. Upon termination of your engagement, you will have 30 days to contact CCAP to reconcile any outstanding monies due you.

12. Ownership of Materials.

CCAP retains all right, title and interest in and to its trademark and any materials which CCAP provides to you during the course of this Agreement. CCAP represents and warrants that CCAP has the right to provide you with such materials for use in performing the services described in this Agreement. All work product prepared by you during this Agreement and relating to the performance of your duties hereunder shall be created as work for hire, and shall be in all respects the property of CCAP and shall be delivered to CCAP promptly upon request.

13. Online Access.

To the extent you use www.culturalcare.com in the performance of your services for CCAP, you agree to comply with the Terms of Use outlined on the site.


_Electronic signature – Paula Ventura____          _2016-09-07 15:51:28.140_____
LCC's signature                                    Date